Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff Bryan Lazzaro*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN LAZZARO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GUIDANCE SOFTWARE, INC., ROBERT VAN SCHOONENBERG, REYNOLDS C. BISH, MAX CARNECCHIA, JOHN COLBERT, PATRICK DENNIS, MICHAEL MCCONNELL, WADE W. LOO, OPEN TEXT CORPORATION, and GALILEO ACQUISITION SUB INC., <br><br> Defendants. | Case No. 2:17-cv-06035 <br><br> **CLASS ACTION** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(d)(4), 14(e), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Bryan Lazzaro ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1.    Plaintiff brings this action on behalf of himself and the public stockholders of Guidance Software, Inc. ("Guidance" or the "Company") against the members of Guidance's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below, and together with the Company "Defendants") for violations of Section 14(d)(4), 15 U.S.C. § 78n(d)(4), of the Securities and Exchange Act of 1934 (the "Exchange Act"), U.S. Securities and Exchange Commission (the

"SEC") Rule 14d-9 promulgated thereunder, 17 C.F.R. § 240. 14d-9, and 14(e) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(e), 78t(a).  Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to Open Text Corporation ("Open Text" or "Parent"), through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading.  Unless these disclosure deficiencies are cured, the Company's stockholders will be forced to decide whether to tender their shares or not based upon a materially incomplete and misleading Recommendation Statement (defined below).

2.    On July 26, 2017, Guidance issued a press release announcing that they had entered into an Agreement and Plan of Merger dated July 25, 2017 (the "Merger Agreement"), by which Open Text's wholly-owned subsidiary, Galileo Acquisition Sub Inc. ("Purchaser"), would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Guidance common stock for $7.10 per share in cash (the "Offer Consideration").  The Tender Offer, commenced August 8, 2017, is set to expire on September 6, 2017.  The proposed merger transaction between Guidance and Open Text (the "Proposed Transaction") has a total value of approximately $240 million.

3.    In connection with the commencement of the Tender Offer, on August 8, 2017, the Company filed a recommendation statement on a Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement is materially incomplete and misleading because, *inter alia*, it fails to disclose material information about the facts and circumstances that led up to the Proposed Transaction. Without all material information, Guidance stockholders cannot make a properly informed decision regarding whether to tender their shares.  The failure to adequately disclose such material information constitutes a violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding whether to tender their shares in connection with the Proposed Transaction.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

4.     For these reasons, and as set forth in greater detail *infra*, the Individual Defendants have violated the federal securities laws and regulations promulgated thereunder. Accordingly, Plaintiff seeks to enjoin the close of the Tender Offer or, in the event the Tender Offer closes without corrective disclosures being made, recover damages resulting from the Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(d), 14(e), and 20(a) of the Exchange Act and SEC Rule 14d-9.

6.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (a) Guidance maintains its headquarters in this District; (b) the conduct at issue took place and had an effect in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES

8.     Plaintiff is, and has been at all relevant times, the owner of shares of ordinary stock of Guidance.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

9.     Guidance is a corporation organized and existing under the laws of the State of Delaware.  It maintains its principle executive offices at 1055 E. Colorado Boulevard, Pasadena, California 91106-2375.  Guidance's common stock trades on NASDAQ under the ticker symbol "GUID."

10.    Defendant Robert van Schoonenberg ("Schoonenberg") has served as Chairman of the Board since January 2016 and has served as a director of the Company since February 2008.

11.    Defendant Reynolds C. Bish ("Bish") has served as a director of the Company since February 2016.

12.    Defendant Max Carnecchia ("Carnecchia") has served as a director of the Company since May 2015.

13.    Defendant John Colbert ("Colbert") has served as a director of the Company since April 2016.

14.    Defendant Patrick Dennis ("Dennis") has served as Chief Executive Officer ("CEO") and a director of the Company since May 2015.

15.    Defendant Michael McConnell ("McConnell") has served as a director of the Company since April 2016.

16.    Defendant Wade W. Loo ("Loo") has served as a director of the Company since February 2016.

17.    Defendants Schoonenberg, Bish, Carnecchia, Colbert, Dennis, McConnell, and Loo are collectively referred to as "Individual Defendants" and/or the "Board."

18.    Defendant Open Text, a necessary party named for relief purposes, is a company organized and existing under the federal securities laws of Canada.

19.    Defendant Purchaser, a necessary party named for relief purposes, is a Delaware corporation and wholly-owned subsidiary of Open Text.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action individually and as a class action on behalf of all holders of Guidance common stock who are being, and will be, harmed by Defendants'

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

21.    This action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

22.    The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of August 3, 2017, Guidance had 33,431,155 shares of common stock outstanding. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class. All members of the Class may be identified from records maintained by Guidance or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants recommended stockholders tender their shares pursuant to the Proposed Transaction through a materially false or misleading Recommendation Statement in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if the securities laws violations are not remedied before the expiration of the Tender Offer; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct.

24.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A)
OF THE SECURITIES EXCHANGE ACT OF 1934

25.     Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

26.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

29.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background*

30.     Guidance provides software for use in digital investigations.  The Company is best known for creating, marketing, and selling a software system called EnCase.  The Company's software has been deployed on an estimated 34 million endpoints.   In addition 78 companies out of the Fortune 100 use Guidance's software solutions.

### *The Sale Process*

31.     In August 2015, Guidance reviewed the progress of its CaseCentral business (the "CaseCentral Business") which it acquired in February 2012.  The CaseCentral Business had not been performing as expected.   Due to the lower performance the Company met with Piper Jaffray & Co ("Piper Jaffray") to discuss alternatives for the CaseCentral Business.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

32.    On September 8, 2015, Piper Jaffray and the Company entered into an engagement letter for the purposes of pursuing potential strategic alternatives relating to the CaseCentral Business.

33.    From September 2015 through January 2016, 15 potentially interested parties were contacted by Piper Jaffray, including Open Text.  The Company executed confidentiality agreements with eight of these parties.  The Company received proposals for an acquisition of the CaseCentral Business from two of the parties contacted, Party A and Party B.

34.    On January 6, 2016, Party B submitted a non-binding term sheet to acquire the CaseCentral Business as well as Guidance's eDiscovery business, for up to $10 million.

35.    On January 13, 2016, Shawn McCreight ("McCreight"), the Company's Chief Technology Officer ("CTO"), founder, and trustee of the Company's largest stockholder, The McCreight Living trust, terminated his relationship as an employee of the Company.

36.    On January 15, 2016, the Board replaced McCreight as Chairman of the Board and formed a committee comprised of independent directors (the "Independent Committee").

37.    On February 9, 2016, the Board met with outside counsel ("Latham & Watkins") and decided to form an M&A committee (the "M&A Committee") which was designed to evaluate potential strategic partnerships and transactions.  The M&A Committee was comprised of Defendant Dennis, Christopher Poole (a former board member), and Defendant Carnecchia.

38.    On February 10, 2016, McCreight submitted a stockholder nomination letter aiming to replace all members of the Board.  The following day, McCreight informed Guidance of his intention to nominate five directors at Guidance's 2016 annual meeting.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A)
OF THE SECURITIES EXCHANGE ACT OF 1934

39.     On February 16, 2016, Party C submitted a non-binding letter of intent and term sheet to acquire the CaseCentral Business for $14 million. The letter included an exclusivity period of 30 days to enable Party C to pursue negotiations concerning a definitive purchase agreement.

40.     On February 22, 2016, Party C submitted a revised non-binding letter of intent to acquire the CaseCentral Business for $15 million, which also included a 30 day exclusivity period. The Company agreed to the request for exclusivity at the recommendation of the M&A Committee.

41.     On March 11, 2016, Defendant Dennis and Barry Plaga, Guidance's Chief Financial Officer ("CFO") and Chief Operating Officer ("COO"), met with Party D at the request of a significant stockholder.

42.     On April 4, 2016, the Independent Committee met and determined not to pursue conversations relating to a potential strategic transaction with Party D due to the ongoing proxy contest with McCreight. During this meeting the Independent Committee also discussed conversations with Party C in which Party C indicated it would have to reduce its proposal price due to its determination, after conducting due diligence, that it would have to make significant investments into the CaseCentral Business if the purchase was to be effectuated.

43.     On April 9, 2016, Party D sent an unsolicited and non-binding indication of interest to Guidance to acquire the entire company for $6 per share.

44.     On April 11, 2016, the M&A Committee met and determined that the Company should seek engagement proposals from financial advisors in connection with Party D's offer, as it was an offer to acquire the entire Company.

45.     Between April 18 and April 22, 2016, the M&A Committee held meetings with four potential financial advisors, including Morgan Stanley & Co. LLC ("Morgan Stanley") and Atlas Technology Group, LLC ("Atlas").

46.     On April 22, 2016, McCreight and Guidance reached a settlement agreement under which Defendant Colbert and Defendant McConnell replaced

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

McCreight and Poole on the Board, and customary standstill provisions were agreed to by McCreight and his affiliated entities.  The M&A Committee was reorganized to include Defendant Bish and Defendant McConnell.

47.    On April 26, 2016, the Independent Committee was dissolved by the Board.

48.    On May 11, 2016, the M&A Committee met and noted that the attempt to sell the CaseCentral Business did not result in any acceptable offers, considering Party C's indication that it would significantly reduce its offer.  The M&A Committee determined that Guidance should instead focus on strengthening the CaseCentral Business.  The M&A Committee also determined that Party D's offer was insufficient relative to the Company's intrinsic value, because the Company's public stock price had been deflated due to the proxy contest with McCreight.  As such, the M&A Committee recommended that the Board not pursue a transaction with Party D.  The M&A Committee also recommended that Atlas be retained by the Company as a non-exclusive financial advisor relating to the review of potential strategic alternatives.

49.    On May 17, 2016, Guidance and Atlas entered into an engagement letter under which Atlas would serve as a non-exclusive financial advisor to assist in the review of strategic alternatives.

50.    On July 29, 2016, Party D submitted a revised indication of interest representing an increased offer price of $7 or more per share in cash.

51.    On July 29, 2016, the Board determined that it should consider all strategic alternatives and that if they decided to pursue a sale process they would reach out to Party D to gauge their continued interest.

52.    On August 12, 2016, Defendant Dennis was introduced by a mutual contact to Mark Barrenechea ("Barrenechea"), CEO and CTO of Open Text, and Douglas Parker ("Parker"), Senior Vice President of Corporate Development at Open Text.  Barrenechea expressed interest in a potential strategic transaction with Guidance and Defendant Dennis stated he was not in a position to discuss such a transaction but would relay the interest to the Board.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

53.    On August 25, 2016, the M&A Committee determined to recommend that the Board retain Morgan Stanley as a second financial advisor, and Defendant Dennis discussed his conversation with Barrenechea with the M&A Committee and other members of the Board who were present.

54.    On August 31, 2016, the Board met and determined to engage with Morgan Stanley for the purposes of a potential sale of Guidance.  On the same day, Guidance and Morgan Stanley entered into an engagement agreement.

55.    On October 17, 2016, Morgan Stanley discussed with the Board a list of potential strategic parties who would have the ability to pursue a transaction.  This list did not include Party A, because it was believed that Party A would not have the financial capability nor the credibility to pursue such a transaction.

56.    On October 26, 2016, Open Text and Defendant Dennis held a phone call during which they both agreed that Open Text should be placed on the list of potential bidders during the sale process.

57.    From late October through November 2, 2016, at the direction of the Board, Morgan Stanley reached out to 30 potentially interested parties regarding the sale process.

58.    On October 26, 2016, the M&A Committee met with Morgan Stanley and Defendant Dennis noted his conversation with Open Text and its desire to be involved in the sale process.  The M&A Committee also determined and requested two members of the Board contact McCreight to determine whether he would be willing to enter into a confidentiality agreement in the event that a voting agreement would be required considering his substantial stock ownership.

59.    On October 27, 2016, Company management and Morgan Stanley met to discuss a potential transaction with Party D.

60.    On October 28, 2016, Morgan Stanley provided Open Text with a draft confidentiality agreement and information regarding a potential acquisition of Guidance.

61.    Between October 28 and November 9, 2016, Open Text and Guidance negotiated the confidentiality agreement, and it was entered into on November 11, 2016.

62.    On November 1, 2016, Morgan Stanley was contacted, on an unsolicited basis, by Party A regarding a potential combination with Guidance under which stockholders would receive cash as well as common stock of Party A.  On the same day, Guidance received an indication of interest from Party A which valued Guidance shares at a range from $7.70 to $8.70 per share.  This indication of interest also included a request for exclusivity until January 1, 2017.

63.    By November 2, 2016, Morgan Stanley had reached out to 30 potentially interested parties (12 strategic parties and 18 financial sponsors).  Of these 30 parties, 13 entered into confidentiality agreements (two strategic parties and 10 financial sponsors) with Guidance.  According to the Recommendation Statement, each of the confidentiality agreements included standstill provisions permitting counterparties to make private acquisition proposals to the Board and/or Guidance's CEO.

64.    On November 2, 2016, the M&A Committee met and discussed Morgan Stanley's progress, the status of discussions with Party D (who requested a meeting with Company management in November 2016), and Party A's contact with Morgan Stanley. Following these discussions, the Board authorized Morgan Stanley to expand the outreach to include four additional parties.

65.    On November 11, 2016, Open Text received a management presentation from Morgan Stanley.  From November 11 through November 30, 2016, Open Text requested and reviewed various due diligence items.

66.    As of November 22, 2016, Morgan Stanley had reached out to 33 potentially interested parties, 12 of which remained in the process.  Morgan Stanley informed potentially interested parties of a December 5, 2016 deadline for delivering preliminary indications of interest.

67.    On November 22, 2016, the Board met and discussed and approved a request from Party D for permission to seek debt financing sources as permitted under

1  the terms of the confidentiality agreement it had entered into with Guidance.  In addition,
2  the Board discussed Party A's proposal and determined that the proposal was likely
3  invalid as it inflated the value of Party A's common stock.  With this in mind, the Board
4  instructed Morgan Stanley to contact Party A so as to determine the valuation methods
5  used and the terms of the proposal.

6      68.    On November 29, 2016, Open Text received access to an online data room
7  to conduct due diligence.

8      69.    On November 29, 2016, Guidance and Party F entered into a confidentiality
9  agreement concerning the sale process.  By December 12, 2016, Party F indicated that it
10  was no longer interested in pursuing a potential acquisition of Guidance.

11     70.    As of December 5, 2016, in addition to the interest from Party A, Morgan
12  Stanley received indications of interest from Party D and Party G.  Party D's proposal
13  included a per share price at or above $7 and indicated Party D could proceed on an
14  expedited basis.  Party G's proposal included a per share price of $7.10 and also indicated
15  that Party G could proceed on an expedited basis.

16     71.    On December 5, 2016, Morgan Stanley was informed by Open Text that it
17  would not meet the specified deadline for the submission of an indication of interest and
18  that internal discussions were occurring with respect to whether it would like to continue
19  pursuing a transaction.

20     72.    On December 6, 2016, at a Board meeting, Morgan Stanley informed the
21  Board of the two indications of interest received and the proposal from Party A, which
22  had not been modified since it was originally submitted on November 1, 2016.  With
23  respect to Party A's proposal, Morgan Stanley also informed the Board that Party A was
24  unable to respond to questions raised regarding clarification as to valuation methods used
25  and the terms of its proposal.  In addition, Morgan Stanley informed the Board that
26  Party A indicated it would not be able to execute a transaction for at least a couple of
27  months.  After discussions with Latham & Watkins, the Board determined to include a
28  "go shop" provision in the draft merger agreement that had been prepared for circulation.

73.     At the same meeting, the Board instructed Morgan Stanley to provide each party that submitted a proposal with the draft merger agreement, to continue conversations with Party D and Party G, and to continue their analysis of Party A's proposal.  In addition, the Board discussed that certain interested parties might require management to continue with the Company, and that Party D had expressly indicated as such in their indication of interest.  With this in mind, the Board requested that management refrain from discussing compensation agreements with the potentially interested parties until the Board consented to such.  Management agreed to comply with this request.

74.     On December 12, 2016, Company management held a due diligence session with Party G.

75.     On December 19, 2016, Company management held a due diligence session with Party D.

76.     On December 20, 2016, the Board met to discuss the status of ongoing discussions with Party A, Party D, and Party G.

77.     On January 4, 2017, Party D reduced its proposed purchase price from $7.10 to "below $7 per share" due to its belief that additional investments would be required upon closing.

78.     On January 7, 2017, Party A informed Morgan Stanley they would not be able to meet Guidance's timeline for the potential transaction and that it would not provide additional information relating to the proposal it previously submitted.

79.     On January 17, 2017, Morgan Stanley provided Party G with a second round bid letter indicating a bid deadline of January 24, 2017.

80.     On January 24, 2017, Guidance received a revised proposal from Party G with a purchase price of $5.60 per share.  Party G expressed that the reduced price was due to concerns relating to the Company's future revenue and its belief that it would have to invest substantial additional capital in the event the transaction closed.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

81.     On January 25, 2017, the Board met and determined to cease reviewing strategic alternatives and to instead concentrate on Guidance's operations as a stand-alone company.

82.     On February 8, 2017, Morgan Stanley reached out to Open Text to resume communications between it and Guidance.

83.     On February 21, 2017, Morgan Stanley received written notice from Guidance terminating their engagement.

84.     On March 21, 2017, Open Text and Defendant Dennis held a phone call during which they discussed the sale process that had previously ended as well as the strategic alternatives that were currently being considered by the Board.

85.     On April 20, 2017, Guidance received a non-binding preliminary indication of interest from Open Text with a cash tender offer at $6.79 per share.  The indication of interest requested an exclusivity period until May 23, 2017, with an automatic extension to May 30, 2017, contingent on Open Text's good faith pursuit of a transaction.

86.     On April 21, 2017, the Board met and discussed Open Text's indication of interest.  The Board determined that the offer price was inadequate and instructed Morgan Stanley to inform Open Text that Guidance would consider limited exclusivity if Open Text increased its purchase price.  On the same day, Guidance reinstated its engagement letter with Morgan Stanley.

87.     On April 21, 2017 and April 23, 2017, Open Text representatives contacted Defendant Dennis to discuss Open Text's interest in acquiring Guidance.

88.     On May 3, 2017, after a request for a counter proposal from Open Text, the Board instructed Morgan Stanley to counter with a proposed purchase price of $7.15 and to send a draft merger agreement to Open Text.

89.     On May 10, 2017, Morgan Stanley provided a draft merger agreement to Open Text which included a 45 day "go shop" period.

90.     Between May 15 and May 31, 2017, Open Text conducted targeted due diligence and relayed that it would consider the proposed offer price.

91.    On June 16, 2017, Open Text submitted a revised proposal containing a $7.05 per share offer and a requirement that a "go shop" period would not be included in the merger agreement.

92.    On June 21, 2017, the Board met and determined it would be willing to accept an exclusivity arrangement with Open Text if Open Text increased its proposed purchase price to $7.15.  This counter offer was relayed to Open Text by Morgan Stanley on June 22, 2017.

93.    On June 23, 2017, Open Text sent Guidance a non-binding preliminary indication of interest with a purchase price of $7.10 to be completed via a public tender offer.  The indication also included an exclusivity period set to expire on July 28, 2017 (with a potential seven-day extension).

94.    On June 27, 2017, at Board's direction, Guidance entered into the exclusivity agreement with Open Text that was set to expire on August 1, 2017.

95.    From June 29, 2017 through July 25, 2017, Open Text conducted due diligence concerning the transaction and various draft merger agreements were exchanged and negotiated between the two parties.

96.    On July 25, 2017, Morgan Stanley submitted its fairness opinion with respect to the transaction and the Board unanimously determined that the merger and tender agreements contemplated with Open Text were in the best interests of Guidance and Guidance stockholders.  As such, the Board determined to recommend Company stockholders tender their shares in support of the Open Text offer.

97.    On the evening of July 25, 2017, Guidance and Open Text entered into the Merger Agreement and on July 26, 2017, Guidance issued a press release on the matter, which stated the following relevant information:

> PASADENA, Calif. – July 26, 2017 – Guidance Software (NASDAQ:GUID), the makers of EnCase®, the gold standard in forensic security, today announced that it has entered into a definitive agreement to be acquired by OpenText™ (NASDAQ:OTEX) (TSX:OTEX), the global leader in Enterprise Information Management (EIM).

Under the terms of the merger agreement, OpenText will commence a tender offer to acquire all outstanding shares of Guidance Software common stock in a transaction valued at approximately $240 million. Subject to the terms and conditions of the offer, Guidance stockholders will receive $7.10 per share in cash for each outstanding share of common stock held.

"Our board of directors has carefully evaluated the merger proposal by OpenText and believes it represents the best value reasonably attainable for our stockholders and will benefit our customers and employees," said Patrick Dennis, Guidance president and CEO. "We believe this all-cash transaction offers our stockholders liquidity and certainty of value. Joining with OpenText is a new beginning for Guidance products, customers and employees."

The merger has been unanimously approved by the Board of Directors of Guidance and is expected to close in the third quarter of calendar 2017. Consummation of the transaction is subject to customary closing conditions, including the receipt of regulatory approvals and the tender of a majority of the shares of Guidance Software common stock in the offer.

Morgan Stanley and Atlas Technology Group are serving as financial advisors and Latham & Watkins is acting as legal counsel to Guidance.

### The Recommendation Statement Misleads Guidance Stockholders by Omitting Material Information

98.     On August 8, 2017, Guidance filed a materially misleading Recommendation Statement with the SEC which was designed to convince stockholders to tender their shares to Open Text. The Recommendation Statement is rendered misleading by the omission of critical information concerning the process that led up to the execution of the Merger Agreement, including the solicitation and offer review process, Morgan Stanley's financial analysis conducted in reaching its fairness opinion, and information regarding potential conflicts of interest faced by Guidance senior management when leading the search for strategic alternatives that ultimately resulted in the execution of the Merger Agreement. As such, the Recommendation Statement, which recommends that the Company's stockholders tender their shares in support of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(d)(4), 14(e), and 20(a) of the Exchange Act.

*Misleading Statements and Omissions Regarding the Sale Process*

99.   The Recommendation Statement contains material misstatements and omissions regarding the solicitation and negotiation process taking place in the lead up to the Merger Agreement.  For example, the Recommendation Statement indicates that on January 20, 2017, Party D submitted a revised offer which contained a reduced price of "below $7 per share."  Just five days later, on January 25, 2017, the Board determined that it would no longer conduct a review of strategic transactions as they had not received any acceptable offers and the "reduced offer price was unacceptable," yet the Recommendation Statement fails to disclose what the value of Party D's revised offer was.

100.   Despite the Board's determination to no longer review potential transactions, the Board entertained an indication of interest from Open Text for $6.79 (a price below $7 per share) on April 20, 2017, and subsequently opened negotiations with Open Text on the proposal.  The Recommendation Statement appears to be purposefully excluding the offer price from Party D, which was "below $7," because such offer may have been similar to, or higher than, the $6.79 Open Text offer.  Were this to be the case, this omission would be particularly misleading as it allows the Company to not be placed in the uncomfortable position of explaining why the Board entertained and negotiated with Open Text upon receiving an offer of $6.79, which was also below $7, but did not act similarly with respect to Party D's proposal.

101.   Similarly, the Recommendation Statement fails to disclose the level of interest expressed by other parties contacted during the strategic review process.  For example, the Recommendation Statement indicates that as of December 2, 2016, "some of the potentially interested parties had indicated potential interest at lower prices than those provided by Party D and Party G," yet the Recommendation Statement fails to discuss what these prices were.  This is particularly concerning as the offer prices being referred to at this time were $7 and $7.10.  Thus, any indication of prices near or above $6.79, should have warranted further negotiations considering the Board's willingness

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

to engage in negotiations with Open Text upon receiving the offer for $6.79. The omission of this information renders the Recommendation Statement materially misleading as to the level of interest potential suitors showed in acquiring the Company.

102. In addition, the Recommendation Statement also fails to disclose the results of discussions with parties Morgan Stanley was instructed to contact regarding a potential sale. More specifically, the Recommendation Statement indicates that on November 2, 2016, the Board instructed Morgan Stanley to reach out to "four additional parties . . . that would be potentially interested in an acquisition of the Company." These four parties were to be in addition to the 30 parties Morgan Stanley had already contacted regarding a potential acquisition. However, there is no indication as to whether Morgan Stanley contacted all four of these additional parties. In contrast, the only additional information on the matter in the Recommendation Statement simply states that "[a]s of November 22, 2016, Morgan Stanley had contacted 33 potentially interested parties." This statement would appear to indicate that at least one of the four additional parties was not contacted. If this is the case, the Recommendation Statement should expressly disclose Morgan Stanley's basis for disregarding the Board's express instruction to reach out to "four additional parties."

103. Similarly, the Recommendation Statement fails to disclose the events surrounding Morgan Stanley's decision to reach out to Open Text after the Board had expressly determined to no longer conduct the strategic review process. Given the fact that Morgan Stanley was present when this decision was reached, the Recommendation Statement should clarify on what basis was Morgan Stanley authorized to make such a communication and/or whether Morgan Stanley was exceeding its authorization and disregarding the Board's decision to no longer engage in the strategic review process.

104. The foregoing information is particularly material, as stockholders would be unable to determine whether there were and may still be other potential acquirers that would be willing to provide greater consideration than that offered by the Tender Offer.

The omission of this information renders the Background of the Transaction section of the Recommendation Statement materially misleading.

***Misleading Statements and Omissions Regarding the Confidentiality Agreements***

105. The Recommendation Statement discloses that Guidance entered into several confidentiality agreements with potential acquirers of certain segments of Guidance's operations during its search for strategic partners. For example, the Recommendation Statement expressly states that "[f]rom September 2015 through January 2016 [the Company] . . . executed confidentiality agreements with eight parties," without disclosing whether such confidentiality agreements contained standstill provisions that are currently hindering or prohibiting these parties from making topping bids.

106. Similarly, the Recommendation Statement indicates that Party F entered into a confidentiality agreement but fails to disclose whether or not such confidentiality agreement contained a standstill provision that is currently hindering or prohibiting Party F from making a topping bid.

107. The Recommendation Statement also indicates that on April 22, 2017, McCreight (the founder of Guidance) and his "affiliated entities agreed to comply with "customary standstill provisions." However, the Recommendation Statement fails to disclose what "customary standstill provisions" entail, and whether such provisions bar McCreight from seeking to acquire the Company as a bidder, whether alone or in conjunction with others.

***Potential Conflicts Facing Company Management and Directors***

108. The Recommendation Statement contains material misrepresentations and omissions regarding employment negotiations taking place during the period in which the Proposed Transaction was being negotiated.

109. The Recommendation Statement fails to disclose the timing of any indications by Open Text that it intended to retain Guidance management. The Recommendation Statement simply states that the "Board requested management . . . not

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

discuss compensation arrangements with any potentially interested party until later in the sale process after such discussions had been consented to by the Company Board" and that "[m]anagement confirmed that they would comply" with the Board's request.

110.   Contrary to the disclosure in the Recommendation Statement, the continuing employment of Guidance management after the close of the Proposed Transaction appears to be a foregone conclusion.  In the press release announcing the Proposed Transaction, Defendant Dennis, Guidance's CEO and President, stated: "Joining with OpenText is a new beginning for Guidance products, customers and employees."

111.   Despite this public statement by Defendant Dennis, the Recommendation Statement actively misleads Guidance stockholders into believing that **no discussions** regarding continued employment of management took place.  While formal agreements on the issue may not have been reached, it is clear that some communication on the issue took place and the Recommendation Statement fails to disclose such communications.

112.   This information is particularly material with respect to Defendant Dennis, as he was instrumentally involved in the negotiations with Open Text throughout the sale process.  For example, Open Text was not included on Morgan Stanley's list of potential bidders until Dennis recommended such.  This recommendation came after Defendant Dennis held a phone call with Open Text during which Open Text and Dennis determined it should be included as a potential bidder.  Similarly, nearly two months after the Board determined to cease considering the strategic transaction process and one month after Guidance terminated its relationship with Morgan Stanley, Dennis held a phone call with Open Text and informed it of the status of the sale process and the Board's current considerations with respect to alternative transactions.  Just one month after this conversation, Open Text submitted a non-binding preliminary indication of interest to acquire the Company.  Any communications—even one-sided written indications in proposals or other written communications—concerning post-merger employment between Open Text or its affiliates and Defendant Dennis, or any other

Guidance officers, directors, or employees, during the sales process, would be material to a stockholder's decision as to whether to tender their shares. Such communications give rise to substantial undisclosed conflicts of interests.

113. Thus, the Recommendation Statement materially misleads Guidance stockholders by omitting material facts concerning the timing and nature of communications between Open Text and the Board or any Guidance senior management regarding post-transaction retention of Guidance's management and/or directors. Guidance stockholders are currently led to believe that the sales process was free from such conflicts of interest, and that no negotiations regarding management retention occurred. The omitted information relating to the timing, content, and parties involved in these communications concerning the post-transaction retention of Guidance's management and/or directors would significantly alter the total mix of information that Defendants have disclosed to solicit stockholder support of the Proposed Transaction. The conflicts of interests created and fostered by such communications would affect the stockholders' perception and analysis of the entire process and the ultimate fairness of the Proposed Transaction. Thus the statements in the Recommendation Statement, relating to Guidance's senior management and/or director's post-transaction retention, are rendered materially misleading by these omissions.

### Morgan Stanley's Financial Analysis

114. The Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Guidance's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether or not to tender their shares. This omitted information, if disclosed, would significantly alter the total mix of information available to Guidance's stockholders.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A)
OF THE SECURITIES EXCHANGE ACT OF 1934

115. With respect to Morgan Stanley's *Public Trading Analysis*, the Recommendation Statement omits the individual multiples and financial metrics for the companies observed by Morgan Stanley in its analysis.

116. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement omits the inputs and assumptions made in deriving the discount rate of 9.9%.

117. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Recommendation Statement omits: (i) the inputs used and assumptions made in deriving the range of discount rate of 8.9% to 10.9%; and (ii) Morgan Stanley's basis for using low projected perpetual growth rates of 1.5% to 2.5%.

118. With respect to Morgan Stanley's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples for each of the selected comparable transactions.  The disclosure of such multiples is necessary because they are a crucial element of these analyses, as the analysis is based on comparison and relative valuation.  Without such disclosure, stockholders are unable to determine whether the range of multiples selected by Morgan Stanley reflects appropriately comparable transactions to the Proposed Transaction.  Failure to disclose this information renders the statements in the Recommendation Statement made by Morgan Stanley pertaining to the fairness of the Proposed Transaction misleading.

119. Without the foregoing omitted information, the Company's stockholders are being misled as to the reliability of and basis for Morgan Stanley's fairness opinion.

### Misleading Statements and Omissions Regarding the Company's Financial Projections

120. The Recommendation Statement fails to disclose material information concerning the Company's financial projections which were utilized by Morgan Stanley in performing the analyses underpinning its fairness opinion.

121. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose the projected net cash as of the end of the

second quarter of calendar year 2019 and the 2019 EBITDA estimates used (note that the Recommendation Statement provides only "Adjusted EBITDA" projections).

122.    Defendants' failure to provide Guidance's stockholders with the foregoing material information renders discussion of Morgan Stanley's analyses disclosed in the Recommendation Statement materially incomplete and misleading, and constitutes a violation of Sections 14(d), 14(e), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder.

123.    Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Claims Against All Defendants for Violations of Section 14(e) of the Securities Exchange Act of 1934**

124.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

125.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . ." 15 U.S.C. § 78n(e).

126.    As discussed above, Guidance filed and delivered the Recommendation Statement to its stockholders, which Defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

127.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction. Defendants

knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

128.   The Recommendation Statement was prepared, reviewed, and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the intrinsic value of the Company and potential conflicts of interest faced by certain Individual Defendants.

129.   Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

130.   In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

131.   The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares.  In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

132.   Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with supporting the Proposed Transaction, they caused it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and misleading.

133.   The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

134.   Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

135.   Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

136.   Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

137.   The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which renders the Recommendation Statement false and/or misleading.

138.   Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and misleading.

139.   The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934

## COUNT III

### Claim for Violation of Section 20(a) of the Securities Exchange Act of 1934 Against the Individual Defendants

140.    Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

141.    The Individual Defendants acted as controlling persons of Guidance within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Guidance and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

142.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

143.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to support the Proposed Transaction.    They were thus directly involved in the making of the Recommendation Statement.

144.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

145.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)

of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.    Declaring that the Recommendation Statement is materially false or misleading;

C.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff and the Class rescissory damages;

D.    Directing the Individual Defendants to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.    Declaring that Defendants violated Sections 14(d)(4), 14(e), and/or 20(a) of the Exchange Act, as well as Rule 14d-9 promulgated thereunder;

F.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.    Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 14, 2017                    **LEVI & KORSINSKY, LLP**

By: _/s/ Rosemary M. Rivas_
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Counsel for Plaintiff Bryan Lazzaro*

Case No. 2:17-cv-06035
CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(D)(4), 14(E), AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934



30 Broad Street, 24th Floor
New York, NY 10004
T:212-363-7500
F:212-363-7171
www.zlk.com

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Bryan P Lazzaro , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of Guidance Software, Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 4/10/17 | GUID | 7 | 6 |
| 4/24/17 | GUID | 1 | 6.01 |
| 5/16/17 | GUID | 2 | 6.31 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this August 11, 2017, at New York, NY.

Name: Bryan P Lazzaro

Signed: